UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:17-CR-38-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION & |
| PACHA PATRICK, | ) | ORDER OF RELEASE |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

In February 2019, the Court sentenced Defendant Pacha Patrick to an 84-month term of imprisonment for her role in a drug trafficking and money laundering conspiracy. DE 475 (Judgment). Patrick, now an inmate at FMC Lexington, has filed a *pro se* motion seeking compassionate release. DE 613 (Motion). 18 U.S.C. § 3582 governs the request. It, as amended by the First Step Act of 2018 (Pub. L. No. 115-391, 132 Stat. 5194 (2018)), requires an inmate seeking compassionate release either to "fully exhaust[ ] all administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on the defendant's behalf" or to wait "30 days from the receipt of such a request by the warden" before filing a motion with the Court. 18 U.S.C. § 3582(c)(1)(A).

Here, Patrick petitioned the FMC Lexington warden, Francisco Quintana, on May 19, 2020. She filed her pending motion more than thirty days after the Warden's receipt of that request. DE 613. The Court therefore found that Patrick met the pre-filing statutory requirement and ordered the Government to respond on the merits. DE 612. The Government responded challenging only exhaustion. DE 615. The Court again ordered the Government to respond to the

merits. DE 619. The Government that time complied. DE 625. Patrick's reply time has elapsed, and the matter stands ripe for review. The Court **GRANTS** Patrick's motion.

## I.     Legal Background

Generally, a "court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). However, Congress has established certain narrow exceptions. One such exception provides:

> [T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A) (relevant portions included).[1] By separate statute, Congress in 1984 explicitly directed the United States Sentencing Commission to define "extraordinary and compelling reasons for sentence reduction[.]" 28 U.S.C. § 994(t); *see id.* at (a)(2) (directing promulgation of "policy statements regarding . . . the appropriate use of . . . (C) the sentence modification provisions set forth in . . . [§] 3582(c) of title 18").

The Sentencing Commission's responsive policy statement arrived in 2006, explaining, in relevant part, that "[e]xtraordinary and compelling reasons warrant the reduction; . . . [if the] defendant is not a danger to the safety of any other person or to the community . . . ; and [t]he reduction is consistent with this policy statement." USSG § 1B1.13 (2006); *see also United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Over the next twelve years, the Commission left

---

[1] This is a provision Congress recently broadened (through a direct federal court portal) as part of the First Step Act of 2018, a criminal justice measure passed on December 21, 2018. *See* PL 115-391, 132 Stat 5194.

that policy statement unchanged while building out a list of elucidative circumstances constituting "extraordinary and compelling reasons" in the §1B1.13 application notes. *Jones*, 980 F.3d at 1104.

When the most recent edition of the Guidelines (2018) issued, § 3582(c) allowed only the BOP to move for compassionate release. *Id*. That changed with the passage of the First Step Act of 2018, which enabled prisoners to circumvent the typically languid BOP and petition courts directly for compassionate release. PL 115-391, 132 Stat 5194; *see also Jones*, 980 F.3d at 1104. Before the Commission could update the Guidelines to reflect or react to this statutory change, "the forces of law and nature collided" and the COVID-19 pandemic gave rise to thousands of prisoner-initiated compassionate release requests. *Jones*, 980 F.3d at 1100.

As a result of the statute leapfrogging the Guidelines, reviewing courts faced a question: Does §1B1.13, written with only BOP-initiated release requests in mind, count as an "applicable policy statement" to guide review of prisoner-initiated §3582(c)(1)(a) release requests? The Sixth Circuit recently answered the question in the negative in *Jones*. 980 F.3d at 1109. As a result, district courts have (at least until the Sentencing Commission updates the Guidelines), "full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

Accordingly, prisoner-initiated compassionate release requests now face a "three-step inquiry."[2] The Court determines (1) whether "extraordinary and compelling reasons" warrant a

---

[2] In *Jones*, the district judge "assumed for the sake of argument that extraordinary and compelling reasons existed in Jones's case" before proceeding to ultimately decide the case based on a balancing of the § 3553(a) factors. 980 F.3d at 1108. Accordingly, the Court does not see a requirement that each step must occur in a particular sequence. Indeed, the Court could deny by finding any one of the three steps unmet. Granting release, though, requires a positive finding at each one. *United States v. Elias*, No. 20-3654, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021) (noting that "district courts must address all three steps" to grant a compassionate-release motion).

sentence reduction, (2) whether release, if granted, would be "consistent with applicable policy statements issued by the sentencing commission,"[3] and (3) whether release is appropriate in light of the § 3553(a) sentencing factors. *Id.* at 1101.[4] In any § 3582 action, the defendant, as the movant, bears the burden of establishing eligibility for a reduction in sentence. *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

## II.  Patrick Proves the Requirements for Release

### a. "Extraordinary and Compelling Reasons"

Post-*Jones*, the determination of what encompasses "extraordinary and compelling reasons" is a matter assigned to the discretion of the district judge. *Jones*, 980 F.3d at 1109. A disproportionately widespread COVID-19 outbreak within a prison, a highly vulnerable inmate, and certainly the appropriate combination of those two factors could constitute an "extraordinary and compelling" reason for early release. *See e.g. United States v. Herring*, No. 6:14-cr-008, 2020 WL 6886256, at *2 (E.D. Ky. Nov. 24, 2020); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *2 (E.D. Mich. Dec. 9, 2020); *see also Elias*, 2021 WL 50169 at *4 (affirming the district court's use of a similar two-part test to determine if there are extraordinary and compelling reasons for compassionate release).

---

[3] Because § 1B1.13 no longer applies here, step two is something of a phantom, at least until a new iteration of the Guidelines issues. If applicable, §1B1.13 would not have allowed relief—Patrick does not present a limiting "medical condition," or other qualification that would cross the threshold set forth in Application Note 1 to the policy statement.

[4] § 1B1.13 also directs courts reviewing BOP-initiated compassionate release requests to determine, pursuant to 18 U.S.C. § 3142(g), whether granting relief would pose a risk to the safety of others or the community. Per *Jones*, the § 3142(g) evaluation is not explicitly required when reviewing prisoner initiated § 3582(c) requests. But, much of this this calculus emerges in the mandatory § 3553(a) evaluation.

Patrick argues for release to home confinement for the remainder of her sentence due to the health risks posed to her by COVID-19. DE 613 at 1. Patrick states that she is at greater risk because she suffers from diabetes, hypertension, and anemia. *Id.* Patrick's medical records, submitted by her and by the Government, confirm these claims. *See generally* DE 613-4 (Patrick's Submission); DE 627 (Government's Submission). She has been diagnosed with type 2 diabetes mellitus, (DE 627 at 8, 167), essential (primary) hypertension, (*id.* at 28, 168), and iron deficiency anemia, (*id.* at 27, 168). The Government concedes the veracity of the health claims and that the CDC recognizes Patrick's particular illnesses as placing her at an increased risk. DE 625 at 7. It argues, however, that these circumstances (many longstanding) are not enough to pass the extraordinary and compelling threshold. DE 625 at 7.

Indeed, Patrick's diagnosis of type 2 diabetes puts her "at an increased risk of severe illness" and her hypertension "might" place her "at an increased risk for severe illness from the virus that causes COVID-19[.]"[5] Courts have agreed that these conditions can support a finding of extraordinary and compelling reasons for granting compassionate release. *See United States v. Manzano*, --- F. Supp. 3d ---, 2020 WL 7223301, at *3–4 (E.D. Mich. Dec. 8, 2020) (collecting cases and noting diabetes and hypertension support a finding of extraordinary and compelling reasons); *United States v. Coates*, Case No. 13-cr-20303, 2020 WL 7640058, at *5 (E.D. Mich. Dec. 23, 2020) (collecting cases and finding hypertension combined with other comorbidities "weighs in favor of granting compassionate release"); *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020) (noting that diabetes and hypertension "satisfy [the extraordinary and compelling] requirement"); *United States v. Lau*, CR. NO. 13-00516 JMS, 2020 WL 7753079, at

---

[5] *People with Certain Medical Conditions*, Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 19, 2021).

*3 (D. Haw. Dec. 29, 2020) (noting that type 2 diabetes supported finding extraordinary and compelling reason for compassionate release); *United States v. Crawford*, No. 2:18-cr-00075-3, 2020 WL 3869480, at *2 (S.D. Ohio July 9, 2020) (noting that diabetes and high blood pressure supported granting compassionate release); *United States v. Jackson*, No. 5:02-cr-30020, 2020 WL 2735724, at *3 (W.D. Va. May 26, 2020) (noting type 2 diabetes and obesity, among other comorbidities and "when paired with the COVID-19 pandemic," created extraordinary and compelling reasons for compassionate release); *cf. United States v. Salvagno*, 456 F. Supp. 3d 420, 428–29 (N.D.N.Y. 2020) (noting that hypertension alone supported granting compassionate release).[6]

Although not discussed by Patrick, her medical records also objectively substantiate severe obesity. *See* DE 627 at 28 (showing a BMI of 52.6 as of September 17, 2020). The CDC includes obesity and severe obesity among the conditions that place people at "at an increased risk for severe illness from the virus that causes COVID-19[.]"[7] Courts have found obesity in the context of COVID-19 a compelling factor in granting compassionate release. *See Herring*, 2020 WL 6886256 at *5 (collecting cases and noting obesity with BMI of 36 supports granting compassionate release); *United States v. Perry*, Criminal Case No. 11-20677, 2020 WL 7024915,

---

[6] Currently, the CDC recognizes only *sickle cell* anemia as increasing the risk for severe illness in patients with COVID-19. *See People with Certain Medical Conditions*, Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 19, 2021). Since Patrick's other conditions are sufficient to find extraordinary and compelling reasons for compassionate release, the Court will not speculate on the science of the interaction between iron deficiency anemia and COVID-19, and therefore weighs the anemia minimally in the analysis.

[7] *People with Certain Medical Conditions*, Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 19, 2021). The CDC defines "obesity" as "a body mass index (BMI) between 30 kg/m$^2$ and < 40 kg/m$^2$" and "severe obesity" as someone with a "BMI of 40 kg/m$^2$[.]" The CDC also warns that people who are overweight ("defined as a BMI > 25 kg/m$^2$ but less than 30 kg/m$^2$") might have an increased risk.

at *3 (E.D. Mich. Nov. 30, 2020) (finding a BMI of only 26.8, with a history of substance abuse similar to Patrick's, supports granting compassionate release). In sum, Patrick's current medical conditions, in combination, certainly place her within the zone of high risk of serious infection in light of the COVID-19 pandemic.

Turning to facility conditions, FMC Lexington has fared especially poorly of late. The BOP's COVID site indicates that FMC Lexington currently has 406 active infections among the inmate population of 1,110—over thirty-six percent of inmates *currently* have COVID-19.[8] At the rate COVID-19 is rampaging through the facility, it is nearly inevitable that Patrick will have significant exposure to the virus if she remains there. Every COVID-19 diagnosis inside a prison is a serious matter that must be addressed swiftly and effectively. The situation, at present, demonstrates, as to Patrick, a compelling basis for release under § 3582. Patrick does not state precisely where she would live upon release, but in her home area, COVID-19 spread is insignificant in comparison to the current conditions of FMC Lexington. Perry County reports in the past 14 days, approximately 68 new cases per 100,000.[9] For a county of approximately 25,000

---

[8] *COVID-19 Coronavirus,* Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Jan. 15, 2021). FMC Lexington has the highest number of positive inmates among BOP facilities. Comparatively, FMC Lexington has trended unfavorably. *Compare United States v. Williams*, CRIMINAL ACTION NO. 2:18-cr-00148, 2020 WL 7646806, at *5 n.2 (S.D.W. Va. Dec. 23, 2020) (noting that, as of December 23, 2020, FMC Lexington was third behind FMC Pekin and Terre Haute USP); *with COVID-19 Coronavirus,* Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Jan. 14, 2021) (noting that FCI Pekin is now 14th, Terre Haute USP is now 33rd, and FMC Lexington is now 1st). These numbers are integrated for all of FMC Lexington, not segregated to the camp. The United States did not address facility status in any way.

[9] *Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. TIMES, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?name=styln-coronavirus&region=TOP_BANNER&block=storyline_menu_recirc&action=click&pgtype=Interactive&impression_id=18940390-54fb-11eb-b222-e511d0538b4c&variant=1_Show (last visited Jan. 19, 2021).

people,[10] that translates to an average of 17 cases per day. If this rate holds for the next fourteen days, the number of active cases would be approximately 00.95% of the population of Perry County. The intensity of the virus is far lower in the Perry County community, as compared to the BOP facility at issue. The entire country has struggled to contain COVID-19. Over 23 million people in the United States have contracted the virus. That number grows by more than 221,000 each day.[11] Regardless of whether Patrick remains in prison, or is released, there will be risk of exposure to COVID-19. However, the Government, in response, does not wrestle with or in any way address FMC Lexington's exponential rate of infection vis-à-vis Patrick's unique health situation and risk-factors. While the Court has no doubt that staff at FMC Lexington are working hard to ensure the safety of its prisoners, Patrick's concerns have merit. The Court gauges facility status, infection prevalence, Patrick's specific frailties, and individualized risk—her particular case presents compelling and extraordinary reasons for release.

### b. § 3553(a) Factors

The Court next turns to the factors set forth in 18 U.S.C. § 3553(a) to determine if release pursuant to § 3582(c)(1)(A) is appropriate. The statute conditions sentence reduction on the "court . . . considering the factors set forth in section 3553(a) to the extent they are applicable." *Id.* The § 3553(a) text includes, as factors here deemed applicable:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;

---

[10] *Quick Facts Perry County, Kentucky*, United States Census Bureau, https://www.census.gov/quickfacts/perrycountykentucky (last visited Jan. 19, 2021) (population estimate 25,758).
[11] *CDC Daily COVID-19 Tracker*, Center for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#cases (reporting 23,653,919 cases as of Jan. 17, 2021).

>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[;] [and]
> . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). The Court considers each apt factor.

The nature and circumstances of the offense and the history and characteristics of Patrick either favor or do not preclude granting compassionate release. At the time of her sentencing, Patrick (then age 40) had a criminal history score of 1, was a category I, and received the Guidelines safety valve. DE 474 (PIR ¶¶ 58, 79, 80). Her lone conviction was a DUI that preceded sentencing by seven years. *Id.* ¶ 78. Moreover, and quite contrary to the Government's conclusory remarks, Patrick had shown significant compliance with court supervision while on bond. In this case, pre-trial, the United States withdrew its detention motion, and the Court released Patrick on bond. *See* DE 110. She was fully compliant with her bond over a lengthy term, and during that period, Patrick succeeded in completing in-patient drug treatment. DE 474 (PIR ¶ 98). Patrick has no history of violence or recidivism. *Id.* ¶¶ 74–83. She also has strong family and community support. *Id.* ¶¶ 84–85. There is little historical reason to doubt that Patrick will follow rules of supervision.

Patrick's pre-trial stability carried through to the BOP. Patrick has completed numerous hours of programming over the span of incarceration. *See* DE 613-2. For example, Patrick has taken classes in parenting, (DE 613-2 at 3), dealing with trauma, (*id.* at 13), and drug abuse education, (*id.* at 10, 12), which address some of the deficits behind her criminality. These skills

9

will help her lead a productive and law-abiding life. She also completed numerous business and vocational trainings that will help her re-enter the work force. *See id.* at 1, 4, 6, 9, 14, 15, 16. Patrick's good behavior while incarcerated warrants recognition and suggests that she will not pose a danger to the public if she is released.[12] She also claims to have worked continuously while at the BOP, and she states that the institution rates her at the lowest risk levels. *See* DE 613 at 1. The Government does not address or dispute these claims. Though rehabilitation "alone" is not an extraordinary or compelling release reason, 28 U.S.C. § 994(t), the Court also does not ignore a defendant's progress in assessing how the § 3553(a) factors apply now. *See Pepper v. United States*, 131 S. Ct. 1229, 1242 (2011).[13]

On the other hand, the gravity of Patrick's crime, as she, the Government, and this Court have pointed out, is certain. Patrick is in prison for her role in an aggravated drug (OC) trafficking

---

[12] These facts all put distance between Patrick and the Government's constructed simulacrum of Patrick. The Government asserts that Patrick is dangerous because "she has historically not done well while on release conditions" and because she has a "lack of success with prior drug treatment[.]" DE 625 at 8. Thus, it argues the need to protect the public from similar crimes remains "exceedingly high." *Id.* It concedes, however, that Patrick is "not likely to engage in violent criminal conduct in the future." *Id.* It surely is fair to account for Patrick's crime, but the Government's argument is factually incongruent with the record. This markedly discounts the value of the Government's points.

[13] The Court in *Pepper* discussed numerous ways "postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors" in the context of resentencing after remand.

> For example, evidence of postsentencing rehabilitation may plainly be relevant to "the history and characteristics of the defendant." . . . Such evidence may also be pertinent to "the need for the sentence imposed" to serve the general purposes of sentencing set forth in § 3553(a)(2)—in particular, to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training . . . or other correctional treatment in the most effective manner." . . . Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary," to comply with the sentencing purposes set forth in § 3553(a)(2).

*Pepper*, 131 S. Ct. at 1242 (citations removed).

and money laundering conspiracy. DE 239 (Plea Agreement). Patrick participated in a complicated conspiracy by distributing oxycodone, a Schedule II controlled substance. *Id.* at 2–3. Patrick also participated in a scheme to launder money from drug distributions back to the out-of-state suppliers. *Id.* at 3. Ultimately, the Court attributed between 10,000 to 30,000 kilograms of marijuana equivalency to Patrick, so sentencing her. DE 474 (PIR ¶ 50). She was a 31/I, and the 31 is indicative of very serious crime. Patrick's remorsefulness for her part in the crime was noted by the Court at sentencing. The Court carefully considered then, and carefully considers now, the need to address crime severity, to promote respect for the law, to justly punish, to deter, and to protect. In this context, given all of Patrick's pre-release characteristics and post-judgment traits, the Court does not view the sentencing aims as foreclosing release at this point along the developed path.

The Court parsimoniously imposed a sentence at the lowest level it could, consistent with § 3553(a). *See* DE 475. The Government argues that Patrick has only served a small fraction of her sentence, what it calls "the brief period of ten months." *See* DE 625 at 8. This is woefully inaccurate. The Court sentenced Patrick in February of 2019, not February of 2020. *See* DE 475 (noting imposition of judgment on February 21, 2019). Further, BOP lists Patrick's release date as March 26, 2024.[14] Patrick had started serving time when she self-surrendered to the United States Marshals in May **2018** after the Court accepted her guilty plea. *See* DE 250. Additionally, she spent a month in custody prior to being released on bond. The Government contends that Patrick has served less than a year; actually, she has served 33 months, nearly thrice the Government's predicate. Accounting for good time, she's 46% through her term.  Even without that benefit, she

---

[14] *Find an inmate.*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited January 13, 2021).

has served over 40% of her total sentence. The facts matter, and these cases deserve a precise calculus. Releasing Patrick now would not unduly fail to honor the sentencing values targeted in the original sentence. Patrick, who had no prior record of note, has done 33 months, much of which has been during the worst pandemic of modern times.[15] The Court recalls that it varied before (on the Government's request, no less) to reflect Patrick's salutary progress and characteristics. *See* DE 631 (Statement of Reasons). This release dovetails with the same positive impressions that ameliorated the February 2019 sentence; Patrick's conduct since is further validating.

All of that said, Patrick still presents risk, founded fully on the potential that she might return to drug use and attendant crime. The Court, premised on the overall record and Patrick's bond compliance, believes it can construct a release scenario that adequately hedges that risk[16] and spares Patrick the unwarranted health dangers associated with further incarceration.

Patrick argues that she should be released to "home confinement" and that she has "demonstrated a verifable [sic] re-entry plan," yet attaches no documentation in support. DE 613 at 1. This basis alone could doom a defendant's motion. *See, e.g., Lau*, 2020 WL 7753079, at *4 ("[T]he court concludes that it would find extraordinary and compelling reasons to justify his release *if* Defendant had a release plan that would provide him a safer environment than Terminal Island.") (emphasis in original). The Government's argument on this point, already debunked, is that Patrick "has historically not done well while on release conditions." DE 625 at 8. Patrick's

---

[15] *Cf. United States v. Green*, TDC-10-761, 2020 WL 2992855, at *4 (D. Md. June 4, 2020) (noting that the COVID-19 pandemic has "sufficiently increased the severity of the sentence beyond what was originally anticipated such that the purposes of sentencing are fully met even with the proposed reduction"); *United States v. Park*, 456 F. Supp. 3d (S.D.N.Y. Apr. 24, 2020) (noting "that [what] was sufficient but no greater than necessary" at sentencing pre-pandemic may become "one immeasurably greater than necessary" during the pandemic).
[16] The Court notes dismantling of the underlying conspiracy, no evidence of persisting criminality by Patrick, the thread of addiction through the crime, and Patrick's development.

pre-trial bond compliance evidences her ability to thrive in a supervised, albeit comparatively unstructured, setting. Furthermore, at least one court in this circuit, and a number of courts outside, have granted a compassionate release request while leaving the question of the precise mechanics for a later hearing. *See United States v. Young*, 458 F. Supp. 3d 838, 849–850 (M.D. Tenn. 2020); *United States v. Maumau*, No. 08-cr-00758, 2020 WL 806121 (D. Utah Feb. 18, 2020); *United States v. Clausen*, No. 00-201-2, 2020 WL 4260795 (E.D. Penn. July 24, 2020); *United States v. Gaines*, CR03-496 TSZ, C17-264 TSZ, 2020 WL 7641201, at *2 (W.D. Wash. Dec. 23, 2020). The Court has conferred with USPO and confirmed that Patrick may return to her pre-custody home. A follow-up hearing will detail the Court's expectations during supervision.

In sum, granting Patrick's compassionate release request would comply with the § 3553(a) factors in light of her history, her continued rehabilitation, and her demonstrated ability to comply with Court supervision. This is a fact- and Defendant-specific analysis, tethered to Pacha Patrick's condition, history, characteristics, and record. In its discretion, the Court has determined to release Patrick per the authority set forth in § 3582(c).

### III. CONCLUSION

In the colloquial sense, the COVID-19 pandemic surely presents extraordinary and compelling concerns for all incarcerated individuals, particularly those with health conditions that might be at a higher risk of a severe reaction to the virus. However, those circumstances were not, prior to the Sixth Circuit's decision in *Jones*, "extraordinary and compelling" reasons for granting early release under § 3582(c)(1)(a). Now, at least until the Sentencing Commission issues an update, § 1B1.13 no longer provides the roadmap for courts reviewing prisoner-initiated compassionate release requests. Instead, district "courts have full discretion . . . to determine

13

whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Jones*, 980 F.3d at 1109.

Here, Patrick's request turns on her well documented health problems and FMC Lexington's current inability to contain the pandemic. Patrick is uniquely susceptible to the virus because of her specific comorbidities and the heightened risks they pose in light of the pandemic. Moreover, the exponential risk of a contagious disease sweeping through a prison is real; this is particularly so where the facility has fared poorly in comparison to other BOP facilities and the general public.

Finally, consideration of the sentencing factors in § 3553(a) supports release. Patrick is a non-violent offender with a history of Court compliance. While the Court's sentence was parsimoniously imposed in 2019, the global pandemic, Patrick's profile, and her continued good behavior have impacted the calculus. In its discretion, the Court, having considered the full record, **GRANTS** DE 612. The Court **ORDERS**:

1. Pacha Patrick's sentence of incarceration is reduced to time served, and the Bureau of Prisons shall release Pacha Patrick forthwith (and by no later than January 21, 2021);

2. Patrick shall immediately be placed on home incarceration at the address identified in the PIR. She may not leave her home (except in the case of a medical emergency requiring ambulance transport) without prior permission of the USPO. Patrick may not have any visitors other than residents in the home, and she may not use a phone or electronic device to contact anyone except USPO and her immediate family. The USPO shall, as soon as it safely can, implement an appropriate means of monitoring Patrick electronically;

3. Patrick shall contact the USPO immediately upon her release and follow the instructions of that office. All supervised release terms shall apply, in addition to those stated in this Order;

4. Patrick must, upon release, quarantine for a 14-day period or as otherwise required by law;

5. The Court will conduct a hearing on **February 3rd, at 1:30 p.m., in London**. At that hearing, the Court will cover all release terms and expectations, detail the period of supervision, list supervision mechanics, and assure Patrick's understanding. Patrick must appear in person at that hearing. The Court, in the interests of justice, appoints Samuel B. Castle, Jr. to represent Ms. Patrick, solely for purposes of preparing for and attending the hearing; and

6. The United States shall immediately notify the FMC Lexington Warden of the content of this Order.

This the 19th day of January, 2021.

Signed By:
_Robert E. Wier_
United States District Judge